IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PEG BANDWIDTH TX, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. _____ |
| | § | |
| TEXHOMA FIBER, LLC | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**PEG Bandwidth TX's Original Complaint**

PEG Bandwidth TX, LLC ("PEG Bandwidth TX") files this Original Complaint against Texhoma Fiber, LLC ("Texhoma Fiber") and for cause of action states the following:

### I.   Parties

1.      Plaintiff PEG Bandwidth TX, LLC is a limited liability company organized and existing under the laws of the State of Delaware. PEG Bandwidth TX, LLC is wholly owned by PEG Bandwidth, LLC ("PEG Bandwidth"), a limited liability company organized and existing under the laws of the State of Delaware. PEG Bandwidth, LLC is wholly owned by CSL Bandwidth, Inc., a Delaware corporation with its principal place of business in Arkansas.

2.      Defendant Texhoma Fiber, LLC is a limited liability company organized and existing under the laws of the State of Oklahoma. As of 2013, Texhoma Fiber's members were Michael J. Hilliary, Douglas J. Hilliary, Edward E. Hilliary, Jr., and Dustin J. Hilliary. Each member of Texhoma Fiber was a resident of Oklahoma. On information and belief, Texhoma Fiber still has the same members, and each of those members remains a resident of Oklahoma. Texhoma Fiber may be served with process by serving its registered agent, InCorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701-2509.

## II.   Jurisdiction and Venue

3.      This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because plaintiff and defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. Venue is proper under 28 U.S.C. § 1391(b)(1) because defendant Texhoma Fiber resides in this district, as residence is defined in 28 U.S.C. § 1391(c)(2).

## III.   Facts

5.      PEG Bandwidth was founded in early 2009. PEG Bandwidth's goal has been to deliver complex network solutions for "cell site backhaul" through the use of new and already-existing fiber optic networks to wireless operators.

6.      From 2009 to February 2012, PEG Bandwidth and PEG Bandwidth TX maintained their principal operations in Collin County, Texas – first in Allen, then in Plano. All of PEG Bandwidth TX's operations were run out of Collin County by employees of PEG Bandwidth, LLC or its predecessor, Wireless Infrastructure Partners, LLC.

7.      In February 2012, PEG Bandwidth moved its principal operating office to The Colony, Denton County, Texas. From February 2012 to August 31, 2016, all of PEG Bandwidth TX's operations were run out of that office by employees of PEG Bandwidth, LLC. Since September 1, 2016, the president of PEG Bandwidth, LLC has been based in Florida, but all or almost all of PEG Bandwidth's operational personnel for Texas remain in The Colony.

2

A.   **PEG Bandwidth and Texhoma Fiber negotiate the DFLA.**

8.     On March 22, 2010, the *Dallas Business Journal* reported on an interview with Ed DeLong, PEG Bandwidth's Chief Operating Officer. The *Dallas Business Journal* reported that PEG Bandwidth was based in Allen, that PEG Bandwidth has "received $15 million in financing from an East Coast private equity firm," and that PEG Bandwidth's first contract was in the Dallas-Fort Worth area.

9.     On the same day, March 22, 2010, Edward Hilliary sent an email to Greg Ortyl, PEG Bandwidth's Senior Vice President of Sales/Marketing in Allen, touting his company's fiber capacity in central Texas and the Wichita Falls area and noting that "we would like the opportunity to serve any of the towers that you are needing bandwidth to."

10.     Ortyl responded that PEG Bandwidth would "love to have a more detailed conversation about partnering. I may be able to turn the Wichita Falls fiber into something quicker than the rest. Would your company consider leasing or selling dark fiber to us by any chance." Hilliary replied that "[w]e may have some places we could lease fiber, but that is something we can look over more closely once we get into more specific discussions."

11.     "Dark fiber" is a telecommunications industry term that refers to an arrangement whereby the lessor installs, maintains, and retains title to the fibers but attaches no electronics to the fibers. Instead, at each end of the fibers and at other locations between the end points, the lessee attaches the transmitting and receiving electronic equipment that processes and passes the communications signals over the optical fibers. Typically, as is the case here, the lessor builds a network consisting of a large number of fibers and then leases or otherwise conveys, pursuant to a substantial upfront fee paid prior to and/or contemporaneously with the delivery of the fibers,

3

4545382v1/013716

the exclusive right to use a subset of those fibers to the lessee for the entire anticipated useful life of the fibers, usually 20-30 years.

12.     Ortyl's and Hilliary's exchange in March 2010 began the negotiations over leasing fiber in the Wichita Falls area to PEG Bandwidth TX. On March 22, 2010, Edward Hilliary claimed to have "recently acquired a telephone company in Texas" – by which he meant Community Telephone and Comcell, which had been owed by the Humpert family. The Humpert family soon joined the negotiations between PEG Bandwidth and the Hilliarys. In those negotiations, neither the Humperts nor the Hilliarys distinguished between the Hilliary family and Humpert family companies. Mike Humpert told representatives of PEG Bandwidth that there was common ownership between Texhoma Fiber and Comcell.

13.     On November 8, 2010, Edward Hilliary, Mike Humpert, and Cliff Humpert met with Ed DeLong, Greg Ortyl, and other PEG Bandwidth employees at PEG Bandwidth's office in Plano to begin hammering out an agreement.

14.     The Hilliarys and Humperts worked together in submitting quotes to PEG Bandwidth. They negotiated as a team. Through several months of negotiations, Greg Ortyl and other PEG Bandwidth personnel in Collin County directed their communications to and received communications, emails, and drafts, including proposed terms for the transaction, from both the Hilliarys and Humperts, again without distinction between the Hilliary family and Humpert family companies.

15.     On March 2, 2011, Edward Hilliary sent a draft "Fiber Lease Agreement" to Greg Ortyl in Collin County. The name of the party leasing the fiber was already filled in: "Texhoma Fiber, Inc." This was the first time either the Hilliarys or the Humperts designated a specific entity as their proposed fiber provider.

4

4545382v1/013716

16.     After negotiations between PEG Bandwidth on one hand and both the Hilliarys and Humperts on the other, on May 25 and 31, 2011, respectively, PEG Bandwidth TX and Texhoma Fiber executed the Dark Fiber Lease Agreement ("DFLA"), a true and correct copy of which is attached as Exhibit A. The DFLA would enable PEG Bandwidth to fulfill a contract with Verizon Wireless to provide backhaul services to its cell sites in the Wichita Falls area.

17.     The dark fiber leased in the DFLA would eventually connect numerous sites in the Wichita Falls area. Under the DFLA, PEG Bandwidth could connect its equipment to the fiber at each site and thereby use the fiber to transmit data between the sites for the benefit of PEG Bandwidth's customers.

18.     In the DFLA, PEG Bandwidth TX agreed to "pay a one-time payment of $840,000" to Texhoma Fiber and an additional $20,000 for each access point site identified in an exhibit to the DFLA upon acceptance of the leased fibers at the site. DFLA Art. 4.1. The exhibit identified 38 access points. In exchange, PEG Bandwidth TX would receive "exclusive use" for 30 years of the leased fibers in the Wichita Falls area. DFLA Art. 1.2, 3.

19.     PEG Bandwidth TX also agreed to pay Texhoma Fiber a monthly maintenance fee. DFLA Article 6.1 required Texhoma Fiber to "maintain and repair equipment in coordination with PEG's Network Operations Center," which would eventually be located in The Colony.

20.     "Acceptance" of fiber was a critical part of the parties' performance. DFLA Article 5.1 provided for Texhoma Fiber to test the leased fibers at each site and to provide the test results to PEG Bandwidth TX. Texhoma Fiber provided test results to PEG Bandwidth operational personnel in Collin County. Those PEG Bandwidth employees then would advise Texhoma Fiber whether PEG Bandwidth TX accepted the fiber. Acceptance of the fiber

5

triggered PEG Bandwidth TX's obligation to pay a site fee to Texhoma Fiber in connection with the tested site, and each acceptance triggered an increase in the monthly maintenance fee due from PEG Bandwidth TX to Texhoma Fiber.

21.     A fiber bundle typically contains 24, 48, or even more fibers. A critical aspect of the negotiations between PEG Bandwidth and Texhoma Fiber concerned the number of those fibers which Texhoma Fiber would lease to PEG Bandwidth TX. After negotiations, the parties agreed that Texhoma Fiber would lease two fibers to PEG Bandwidth TX in the "backbone" of the fiber route, and four fibers in the "lateral" routes. DFLA Art. 1.2. The backbone of a fiber network is a ringed configuration that runs throughout the network's area and provides communications redundancy by enabling communications traffic to be routed in either direction around the ring; the laterals of a fiber network are unringed extensions that extend in or out from the backbone ring to specific service locations, in this case cell sites.

22.     Because Texhoma Fiber was leasing only a fraction of its fibers to PEG Bandwidth, it was critical to PEG Bandwidth that Texhoma Fiber not be able to circumvent PEG Bandwidth's 30-year exclusivity by leasing other fibers in the same bundle to one of PEG Bandwidth's competitors at the specific service locations, or cell sites, subject to the DFLA. The parties agreed in DFLA Article 18.1 that Texhoma Fiber would not circumvent PEG Bandwidth's exclusivity:

> NON-CIRCUMVENTION.  TEXHOMA FIBER shall not, directly or indirectly through other customers, offer or provide services to licensed CMRS [Commercial Mobile Radio Service] carriers at the sites contained in Exhibit A, without the prior written consent of PEG. Nothing herein shall restrict ` TEXHOMA FIBER'S right to provide any services to wireless carriers at sites not contained in Exhibit A.

4545382v1/013716

23.    Texhoma Fiber and PEG Bandwidth TX agreed that Texas law would govern the DFLA, and that any notices to PEG Bandwidth TX would be sent both to PEG Bandwidth's CEO in Pennsylvania and its COO in Plano. DFLA Art. 18.7, 18.9.

**B.    PEG Bandwidth uses the leased fiber to service US Cellular.**

24.    On July 15, 2011, PEG Bandwidth entered into a Master Services Agreement to provide cellular communications services to United States Cellular Corporation ("US Cellular"), a cellular carrier.

25.    On August 10, 2011, US Cellular issued a Market Service Order for PEG Bandwidth to provide cell site backhaul service to US Cellular for five years in the Wichita Falls area.

26.    Over the succeeding five years, PEG Bandwidth provided cell site backhaul service to US Cellular using the fibers leased from Texhoma Fiber pursuant to the DFLA. PEG Bandwidth employees in Collin County – and, later, Denton County – managed service, billing, and all other aspects of PEG Bandwidth's relationships with US Cellular and Texhoma Fiber concerning the Wichita Falls region.

27.    In a First Amendment to the DFLA, signed on September 22-23, 2011, PEG Bandwidth agreed to pay Texhoma Fiber an additional $500,000 on top of the $840,000 "one-time payment" agreed to in the DFLA. The parties deleted five sites from the original DFLA, added nineteen new sites, and stipulated that the site fee would be $20,000 per site for the first five new sites and $10,000 per site for the other fourteen new sites. The Amendment stated that the "terms, conditions and provisions of the Dark Fiber Lease Agreement . . . are hereby ratified and confirmed." A true and correct copy of the First Amendment is attached as Exhibit B. The

4545382v1/013716

First Amendment was entered into principally in order to enable PEG Bandwidth to service the US Cellular cell sites.

28.     While PEG Bandwidth performed its contractual obligations, Texhoma Fiber dragged its feet and refused to perform as agreed. Knowing that PEG Bandwidth needed Texhoma Fiber's performance in order to service Verizon Wireless and US Cellular, Texhoma Fiber tried to extract more money from PEG Bandwidth by refusing to build out the agreed sites unless PEG Bandwidth paid additional money. Texhoma Fiber's demands led to the Second Amendment to the DFLA, signed in August 2012. The parties agreed that PEG Bandwidth would pay $60,000.00 per site for five of the sites to which Texhoma Fiber still had not delivered the fiber network, and that eleven other sites would be deleted altogether. Once again, the parties "ratified and confirmed" the terms of the DFLA. A true and correct copy of the Second Amendment is attached hereto as Exhibit C.

C.     **Texhoma Fiber's misrepresentations lead to a lawsuit.**

29.     In the DFLA, Texhoma Fiber had represented that it had constructed and installed (or would construct and install) the fibers subject to the lease arrangement in a workmanlike manner, had the right to lease the fibers to PEG Bandwidth, and acquired the necessary rights to operate and maintain those fibers. DFLA First "Whereas" Clause, Arts. 1.1, 9.2, 9.3, 9.4.

30.     Texhoma Fiber's representations were false. Texhoma Fiber may then have owned some – but certainly not all, or even most – of the fiber it leased to PEG Bandwidth. After Texhoma Fiber executed the DFLA, Mike Humpert and Edward Hilliary acknowledged between themselves that "a substantial portion of the Texhoma Fiber Route is comprised of fiber owned by Community and Comcell." The Hilliarys had orally agreed to purchase Community Telephone Company, Inc., but no sale had as yet been effectuated. Edward Hilliary and

8

Mike Humpert agreed that if Hilliary Communications did not finalize the purchase, then Community Telephone could "disconnect their facilities." The Hilliarys' purchase of Community Telephone was never consummated.

31.      Community Telephone and Comcell sued the Hilliarys in March 2013. Community Telephone and Comcell alleged that they – not Texhoma Fiber – owned a substantial portion of the fiber network. Contrary to prior representations made to PEG Bandwidth, Comcell and Community Telephone asserted that they never were acquired by, owned by, or formally affiliated with Texhoma Fiber.

32.      In their lawsuit, Community Telephone and Comcell alleged that they could "disconnect Defendants' [Hilliary Communications and Texhoma Fiber's] use of the Texhoma facilities."

33.      On March 12, 2014, Texhoma Fiber sent a letter to PEG Bandwidth's CEO in Pennsylvania and to Ed DeLong, PEG Bandwidth's COO in Plano, asserting that "on March 12, 2014, Texhoma Fiber, LLC assigned to Comcell, Inc., all rights, title and interest in the Dark Fiber Lease Agreement between Texhoma and PEG Bandwidth TX, LLC, dated May 31, 2011, and the two subsequent amendments to the Dark Fiber Lease Agreement, dated September 23, 2011, and August 17, 2012, as permitted by paragraph 18.10 of the Dark Fiber Lease Agreement." Texhoma Fiber then directed PEG Bandwidth to "make all further payments due under said lease and amendments to Comcell, Inc." A true and correct copy of this notice is attached as Exhibit D to this complaint.

34.      Texhoma Fiber's assignment to Comcell was an apparent attempt to fix the problem Texhoma Fiber had created by leasing to PEG Bandwidth TX fiber which actually was owned by Comcell or Community Telephone, not Texhoma Fiber. The parties subsequently

4545382v1/013716

dismissed the lawsuit, and PEG Bandwidth and Comcell entered into a Third Amendment to the DFLA.

**D.**      **Texhoma Fiber claims that it is not bound by the DFLA.**

35.      In March 2015, US Cellular put out for bid the provision of cellular services in the Wichita Falls area for another five-year period. PEG Bandwidth submitted a bid. In January 2016, PEG Bandwidth was informed that it lost the bid. US Cellular has now terminated PEG Bandwidth's service through the Wichita Falls region.

36.      PEG Bandwidth has learned that Dobson Technologies won the bid for the US Cellular backhaul contracts in Wichita Falls, and that Texhoma Fiber is leasing fiber to Dobson Technologies at the sites for which US Cellular terminated service with PEG Bandwidth and which are subject to the DFLA's 30-year Non–Circumvention agreement. Dobson would have been able to offer a more competitive bid because of its access to fiber leased by Texhoma Fiber in breach of the non-circumvention provision. There is no other fiber ready for immediate use in many locations in the Wichita Falls service area, including the sites for which US Cellular terminated service with PEG Bandwidth and which are subject to the DFLA's 30-year Non-Circumvention agreement.

37.      US Cellular is a licensed CMRS carrier. PEG Bandwidth TX has not consented to Texhoma Fiber offering or providing services, indirectly through Dobson, to US Cellular. Accordingly, Texhoma Fiber is in breach of Article 18.1 of the DFLA.

38.      PEG Bandwidth confronted Texhoma Fiber about its actions. Texhoma Fiber responded by asserting that it no longer was bound by the Non-Circumvention clause because it had assigned its obligations under the DFLA to Comcell.

4545382v1/013716

39.     Texhoma Fiber's assignment argument is spurious. DFLA Article 18.10 provides, in part, that:

> Texhoma Fiber may, without PEG's consent, but with notice to PEG, assign its rights and obligations hereunder to any entity, or to any affiliate of TEXHOMA FIBER or pursuant to a merger, stock sale or sale or exchange of substantially all the assets of TEXHOMA FIBER.

But Texhoma Fiber assigned to Comcell only its "rights, title, and interest" – not its obligations. Texhoma Fiber could not assign its non-circumvention obligation to Comcell without, at a minimum, also assigning the fibers to which that obligation applied. Texhoma Fiber did not assign all of those fibers to Comcell. Texhoma Fiber assigned only "rights, title, and interest" in the contract to Comcell – along with just the fibers necessary to service PEG Bandwidth – in an apparent attempt to cure Texhoma Fiber's breach of the DFLA (as well as certain obligations it owed to Comcell) by having leased to PEG Bandwidth TX fibers which it did not own.

## IV.    Cause of Action – Declaratory Judgment

40.     PEG Bandwidth TX incorporates by reference the factual allegations contained in the preceding paragraphs.

41.     Pursuant to 28 U.S.C. § 2201, PEG Bandwidth TX requests that this Court construe Articles 18.1 and 18.10, and any other relevant provisions of the DFLA, to determine PEG Bandwidth TX's and Texhoma Fiber's respective rights and obligations. Specifically, PEG Bandwidth TX requests that the Court declare that Texhoma Fiber has a continuing duty, extending for thirty years from the date of acceptance, for each site listed in the DFLA or its amendments, not to directly or through other customers, offer or provide services to licensed CMRS carriers, without prior written consent of PEG Bandwidth TX.

4545382v1/013716

42.    By granting the declaratory relief sought by PEG Bandwidth TX, this Court will clarify an ongoing and continuing dispute as to the parties' rights and obligations under the DFLA.

### V.    Prayer for Relief

43.    Plaintiff PEG Bandwidth TX requests that the Court award it the declaration described above and such further necessary or proper relief to which plaintiff is justly entitled.

Respectfully submitted,

By:   */s/ Robert Rivera, Jr.*
    Robert Rivera, Jr.
    Texas Bar No. 16958030
    rrivera@susmangodfrey.com
    SUSMAN GODFREY, L.L.P.
    1000 Louisiana Street
    Suite 5100
    Houston, Texas 77002
    (713) 651-9366
    (713) 654-6666 (fax)
    *Attorney-in-Charge for Plaintiff*
    *PEG Bandwidth TX, LLC*

OF COUNSEL:

Johnny W. Carter
Texas Bar No. 00796312
jcarter@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
(713) 651-9366
(713) 654-6666 (fax)

4545382v1/013716