# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PEG BANDWIDTH TX, LLC | § | |
| | § | |
| | § | Civil Action No. 4:16-CV-00815 |
| v. | § | Judge Mazzant |
| | § | |
| TEXHOMA FIBER, LLC | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Texhoma Fiber, LLC's Motion for Summary Judgment (Dkt. #36) and Plaintiff PEG Bandwidth TX, LLC's Motion for Partial Summary Judgment (Dkt. #37). Having considered the relevant pleadings and evidence, the Court finds that Plaintiff's motion should be granted. The Court further finds that Defendant's motion should be granted in part and denied in part.

## BACKGROUND

Plaintiff PEG Bandwidth TX, LLC ("PEG") provides network solutions for cellular telephone carriers. In 2010 and 2011, PEG began discussions with the Hilliary family about providing PEG access to fiber optic cables for the purpose of supplying "backhaul" service to cellular carriers in the Wichita Falls area.[1] Defendant Texhoma Fiber, LLC ("Texhoma Fiber") is owned by the Hilliarys. The fiber in Wichita Falls was owned by Community Telephone, a subsidiary of Comcell, Inc. ("Comcell"), which was owned by the Humpert family. The Hilliarys were in discussions to purchase Comcell, but had not finalized the acquisition.

The parties negotiated an agreement whereby Texhoma Fiber would lease to PEG pre-existing fiber in the Wichita Falls area and PEG would pay Texhoma Fiber to build out and extend

---
[1] "Backhaul" service connects a cell phone tower or site to a switch location designated by the cellular telephone carrier in order to enable the cellular carrier to service a market.

the Wichita Falls fiber network to make it suitable for PEG to supply backhaul service to its customers. In May 2011, the parties finalized the contract into an agreement called the Dark Fiber Lease Agreement (the "Lease Agreement"). Texhoma Fiber was named as the lessor in the Lease Agreement. The dark fiber leased in the Lease Agreement would eventually connect numerous sites in the Wichita Falls area. Under the Lease Agreement, PEG could connect its equipment to the fiber at each site and thereby use the fiber to transmit data between the sites for the benefit of its customers.[2] Specifically, PEG used the fiber leased pursuant to the Lease Agreement in order to service three CMRS [Commercial Mobile Radio Service] carriers – Verizon Wireless, US Cellular, and AT&T. The term of the Lease Agreement was thirty (30) years.

The Lease Agreement stated that "TEXHOMA FIBER owns and operates a continuous fiber optic network between the points identified in Exhibit A." The Lease Agreement defined the location of the fiber in Exhibit A as the "Texhoma Fiber Route." The Lease Agreement provided for PEG to pay Texhoma Fiber $1.6 million in order to design, engineer, and construct a continuous fiber optic network in the Wichita Falls area that PEG could lease for the purpose of serving its cellular telephone customers.

Initially, the network would consist of 48-count fiber optic cable that connected the cell sites described on Exhibit "A" to the Lease Agreement. As amended, the Lease Agreement gave PEG the exclusive right to use only six of those fibers throughout the network.[3] Therefore, there were 42 fibers in the bundle to which PEG did not have exclusive access, even though it had largely

---

[2] This is a typical arrangement in the telecommunications industry whereby the lessor installs, maintains, and retains title to the fibers but attaches no electronics to the fibers. Instead, at each end of the fibers and at other locations between the end points, the lessee attaches the transmitting and receiving electronic equipment that processes and passes the communications signals over the optical fibers. Typically, as is the case here, the lessor builds a network consisting of a large number of fibers and then leases or otherwise conveys, pursuant to a substantial upfront fee paid prior to and/or contemporaneously with the delivery of the fibers, the exclusive right to use a subset of those fibers to the lessee for the entire anticipated useful life of the fibers.

[3] After negotiations, the parties agreed that Texhoma Fiber would lease two fibers to PEG in the "backbone" of the fiber route, and four fibers in the "lateral" routes.

paid for the construction of the network for those additional fibers. In total, PEG paid Texhoma Fiber $2,240,000 for the Texhoma Fiber Route.

In order to protect PEG's interests, the parties agreed that Texhoma Fiber could lease the other 42 fibers to other lessees subject to a non-circumvention provision:

> 18.1 NON-CIRCUMVENTION. TEXHOMA FIBER shall not, directly or indirectly through other customers, offer or provide services to licensed CMRS carriers at the sites contained in Exhibit A, without the prior written consent of PEG. Nothing herein shall restrict TEXHOMA FIBER'S right to provide any services to wireless carriers at sites not contained in Exhibit A.

Lease Agreement, at § 18.1.

This 30-year non-compete obligation restricts Texhoma Fiber from directly or indirectly offering or providing any service to any licensed CMRS carriers at any of the sites located on Texhoma Fiber Route (or any other sites that became subject to the Lease Agreement), without first receiving written consent from PEG. The non-circumvention provision allowed Texhoma Fiber to use the other 42 fibers to service customers other than licensed CMRS carriers, such as local businesses seeking to connect multiple sites. It also permitted Texhoma Fiber to use the other 42 fibers to provide backhaul service to CMRS carriers at locations not subject to the Lease Agreement.

On July 15, 2011, PEG entered into a Master Services Agreement (the "US Cellular Agreement") to provide cellular communication services to United States Cellular Corporation ("US Cellular"). On August 10, 2011, pursuant to the US Cellular Agreement, US Cellular issued a Market Service Order that authorized PEG to provide cell site backhaul services to US Cellular for five years at fourteen new cell sites in the Texhoma Fiber Route.

Texhoma Fiber ultimately never finalized its purchase of Comcell. Because Texhoma Fiber was using fiber owned by Comcell's subsidiary, Community Telephone, apparently without

compensating Comcell, Comcell and Community Telephone eventually threatened to disconnect their fiber from the Texhoma Fiber Route. Then, Comcell and Community Telephone filed suit against both Texhoma Fiber and PEG.

Texhoma Fiber settled with Comcell and Community Telephone in 2014. In the settlement, Texhoma Fiber agreed to pay Comcell and Community Telephone $250,000, to assign to Comcell the Lease Agreement, and to convey to Comcell half the fiber in the route served by the Lease Agreement. PEG was not a party to this settlement. On January 1, 2014, Texhoma Fiber, pursuant to § 18.10 of the Lease Agreement, assigned the Lease Agreement to Comcell ("Comcell Assignment"). The relevant assignment provision reads:

> Texhoma does hereby assign and transfer unto Comcell, effective as of [January 1, 2014], all of Texhoma's benefits, obligations and liabilities under the PEG Bandwidth Contract, to have and hold the same. Subject to the provisions of Section 1(b) below, Comcell hereby accepts such assignment and transfer and therefore agrees to assume all of Texhoma's benefits, obligations and liabilities under the PEG Bandwidth Contract pursuant to the terms of this Assignment.

(Dkt. #36, Exhibit 6).

By letter dated March 12, 2014, Texhoma Fiber, pursuant to § 18.10 of the Lease Agreement, notified PEG about the Comcell Assignment, and directed PEG to send all further payments due under the Lease Agreement to Comcell. The notice letter stated, "Texhoma Fiber, LLC assigned to Comcell Inc., all rights, title and interest in the Dark Fiber Lease Agreement . . . . By this Notice, you are directed to make all future payments due under said Lease and amendments to Comcell, Inc." (Dkt. #37, Exhibit 21). On July 2, 2014, PEG and Comcell agreed to amend the Lease Agreement for a third time to include Comcell as successor in interest to Texhoma Fiber. After the assignment, the fiber optic sheath in the Texhoma Fiber Route contained 24 fibers owned by Texhoma Fiber and 24 fibers owned by Comcell, with Comcell's fibers servicing PEG (Dkt. #37, Exhibit 15).

After the assignment, Texhoma leased certain fiber to Dobson Technologies ("Dobson"), which Dobson has used to provide cellular communication services to US Cellular at some of the US Cellular Sites (Dkt. #39 at p. 7). In 2016, US Cellular did not renew its contract with PEG. US Cellular instead contracted for Dobson Technologies to provide service at the same sites subject to the Lease Agreement in the Wichita Falls area.

On December 1, 2016, PEG filed its amended complaint asserting that Texhoma Fiber breached the Lease Agreement's thirty-year non-compete obligation by leasing fiber to Dobson at some of the US Cellular Sites where PEG formerly provided cell site backhaul services to US Cellular (Dkt. #4). On December 8, 2017, the Texhoma Fiber filed its Motion for Summary Judgment (Dkt. #36). On the same day, PEG filed its Motion for Partial Summary Judgment (Dkt. #37). On December 29, 2017, both parties filed their respective responses (Dkt. #38; Dkt. #39). On January 5, 2018, Texhoma Fiber filed its reply (Dkt. #41). On January 8, 2018, PEG filed its reply (Dkt. #43). On January 8, 2018, PEG filed its sur-reply (Dkt. #44). On January 11, 2018, Texhoma Fiber filed its sur-reply (Dkt. #45).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court

"must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or

weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### I. Breach of Contact

Both parties have moved for summary judgment on the contract issues (Dkt. #36; Dkt. #37). The Court, sitting in diversity, applies Texas law in the interpretation of contracts. *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 150 F.3d 526, 529 (5th Cir. 1998). Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance;[4] (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In re Staley,* 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.). PEG claims that it can establish each element. Texhoma Fiber argues that the non-circumvention provision is invalid because it is overly broad, and that even if the covenant is valid, it did not breach the terms. The Court will address each argument in turn.

Section 18.1 of the Lease Agreement disallows Texhoma Fiber from, directly or indirectly through other customers, offering or providing services to licensed CMRS carriers at the sites contained in Exhibit A, without the prior written consent of PEG. It is undisputed that Texhoma Fiber, indirectly through its customer Dobson, has since 2016 provided service to US Cellular at

---

[4] In its Response to PEG's Motion for Partial Summary Judgment, Texhoma fiber asserts that "PEG committed a prior breach of the [Lease Agreement] which excused Texhoma from continuing to perform." (Dkt. #39 at p. 20). "[T]he contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded." *Pivotal Payments, Inc. v. Taking You Forward LLC*, No. 4:16CV-00598, 2017 WL 834980, at *3 (E.D. Tex. Mar. 1, 2017) (quoting *Compass Bank v. MFP Fin. Servs., Inc.,* 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied)) (citing *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 327 (Tex. App.-Houston [1st Dist.] 1997, pet. denied) (citing Tex. R. Civ. P. 94)). *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 411 (5th Cir. 2009). Here, Texhoma Fiber failed to affirmatively plead such defense. Thus, this affirmative defense is waived.

sites listed in Exhibit A to the Lease Agreement, as amended (Dkt. #39 at ¶ 18). Thus, Texhoma Fiber would seem to be in breach of the Lease Agreement.

However, Texhoma Fiber argues that it assigned to Comcell all of its "benefits, obligations and liabilities" under the Lease Agreement. It further argues that the Lease Agreement does not limit the rights or obligations it can assign under the Lease Agreement, but simply requires it to provide notice to PEG of the assignment pursuant to § 18.10. Thus, the assignment did not exclude any of Texhoma Fiber's obligations under the Lease Agreement, and therefore, included the thirty-year non-circumvention obligation. Texhoma Fiber further claims that it conveyed to Comcell all of the fibers in the Wichita Falls Network that PEG had an exclusive right to use.

PEG claims that Texhoma Fiber's notice was incomplete. PEG asserts that Texhoma Fiber notified PEG only that it had "assigned to Comcell, Inc., all *rights, title, and interest*" in the Lease Agreement. Further, PEG asserts that the notice specifically addresses only payments due from PEG, which are to be directed to Comcell, instead of Texhoma Fiber, going forward. Thus, PEG claims that Texhoma Fiber did not notify PEG Bandwidth about assignment of any "obligations," such as the non-circumvention obligation.

PEG further claims that Texhoma Fiber's notice was false because Texhoma Fiber had not assigned *all* rights, title, and interest to Comcell. Rather, Texhoma Fiber had retained its rights, title, and interest in *half* of the fiber which is the subject matter of the Lease Agreement. The Settlement Agreement with Comcell required Texhoma Fiber to execute a Bill of Sale, in which Texhoma Fiber conveyed only half of its interest in the Texhoma Fiber Route. As a result, at most locations in the Texhoma Fiber Route, the fiber optic sheath contained twenty-four fibers owned by Texhoma Fiber and twenty-four fibers owned by Comcell, with Comcell's fibers servicing PEG Bandwidth.

PEG further argues that § 18.10 does not permit an assignment of all obligations, including the non-circumvention provision, but only part of the rights. According to PEG, in order to avoid the non-circumvention obligation with respect to its retained fibers, Texhoma Fiber has to prove a novation with respect to that obligation and asserts Texhoma Fiber has not presented any evidence showing PEG agreed to extinguish the non-circumvention obligation with respect to half of the fibers. PEG further argues Texhoma Fiber cannot point to any authority allowing it to destroy a contractual obligation by purporting to assign the obligation while keeping the contractual rights or property to which that obligation pertains.

The Court need not address whether Texhoma Fiber's notice of the assignment was sufficient because it finds that the Lease Agreement does not extinguish Texhoma Fiber's non-circumvention obligation through an assignment.

In *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, the Texas Supreme Court held that an assignment relieves a party of its obligations only if it effects a novation. 207 S.W.3d 342, 346 (Tex. 2006). The Texas Supreme Court looked to the *Restatement (Second) of Contracts*, which states:

> An obligor is discharged by the substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent, *forming a novation*. . . . Otherwise, the obligee retains his original right against the obligor, even though the obligor manifests an intention to substitute another obligor in his place and the other purports to assume the duty.

RESTATEMENT (SECOND) OF CONTRACTS § 318, cmt. d. (emphasis added).

> *A duty cannot be "assigned" in the sense in which "assignment" is used in this Chapter*. The parties to an assignment, however, may not distinguish between assignment of rights and delegation of duties. A purported "assignment" of duties may simply manifest an intention that the assignee shall be substituted for the assignor. *Such an intention is not completely effective unless the obligor of the assigned right joins in a novation*, but the rules of this Section give as full effect as can be given without the obligor's assent.

9

RESTATEMENT (SECOND) OF CONTRACTS § 328, cmt. a. (emphasis added). *See Seagull Energy*, 207 S.W.3d at 346–47.

"A party raising the defense of novation must prove (1) the validity of a previous obligation; (2) an agreement among all parties to accept a new contract; (3) the extinguishment of the previous obligation; and (4) the validity of the new agreement. . . . It must clearly appear that the parties intended a novation, and novation is never presumed." *Fulcrum Central v. AutoTester, Inc.*, 102 S.W.3d 274, 277-78 (Tex. App.—Dallas 2013, no pet.).

Texhoma Fiber has failed to come forth with any evidence of novation and concedes that a party to a contract generally cannot escape its contractual obligations merely by assigning the contract to a third party (Dkt. #36 at p. 8). However, Texhoma Fiber contends that the operative language of the Lease Agreement, specifically Section 18.10, expressly and unambiguously permits Texhoma Fiber to assign all its contractual obligations, including the non-circumvention obligation (Dkt. #36 at p. 9).

"An unambiguous contract must be interpreted by the court as a matter of law." *Id.* (citing *SAS Institute, Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex. 2005)). If a contract "is worded so that a court can give it a certain or definite legal meaning or interpretation, it is not ambiguous." *Id.* When a contract is unambiguous, extrinsic evidence "will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.'" *Skyland Developers, Inc. v. Sky Harbor Assocs.,* 586 S.W.2d 564, 568 (Tex. App—Corpus Christi 1979, no writ) (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)). The court must enforce the unambiguous language in a contract as written, and the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731–32 (Tex. 1981).

Contract terms "are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The Court's primary concern is to enforce the parties' intent as expressed in the contract. *Sundaram*, 2008 WL 80017 at *9. When construing a contract, the intention of the parties is to be gathered from the instrument as a whole. *See Seagull Energy*, 207 S.W.3d at 345; *SAS Institute*, 167 S.W.3d at 841. The "court is bound to read all parts of a contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *SAS Institute, Inc.*, 167 S.W.3d at 841.

The assignment provision reads:

> PEG shall not assign this Agreement in whole or in part, nor sublet the Leased Fibers, without the prior written consent of TEXHOMA FIBER, which TEXHOMA FIBER may withhold in its sole discretion. Provided, PEG may assign this Agreement in whole or in part to an affiliate, subsidiary or parent company of PEG or pursuant to a merger, stock sale or sale or exchange of substantially all of the assets of PEG or any of its affiliates, subsidiaries or parent companies with prior notice to TEXHOMA FIBER. TEXHOMA FIBER may, without PEG's consent, but with notice to PEG, assign its rights and obligations hereunder to any entity, or to any affiliate of TEXHOMA FIBER or pursuant to a merger, stock sale or sale or exchange of substantially all the assets of TEXHOMA FIBER. This Agreement binds and inures to the benefit of any permitted assignees or successors to the parties.

Lease Agreement, at § 18.10.

Neither party disputes that the Lease Agreement is unambiguous. Furthermore, a plain reading of the Lease Agreement leads the Court to the conclusion that the contract is unambiguous and the Court, therefore, will interpret its meaning as a question of law. The Court finds that an assignment pursuant to § 18.10 of the Lease Agreement is not a valid release of Texhoma Fiber's liabilities and responsibilities.

"Generally speaking, a party cannot escape its obligations under a contract merely by assigning the contract to a third party." *Seagull Energy*, 207 S.W.3d at 346–47 (citations omitted). "Thus, as a general rule, a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract." *Id.* at 347 (citations omitted). In *Seagull Energy*, the operator sought the reimbursement of costs incurred after the assignor assigned its interests to the assignee. The operating agreement in *Seagull Energy* included a provision entitled "Assignment of Interest." It states:

> Each Participating Party desiring to abandon a well pursuant to Section 14.2 shall assign effective as of the last applicable election date, to the non-abandoning Parties, in proportion to their Participating Interests, its interests in such well and the equipment therein and its ownership in the production from such well. Any party so assigning *shall be relieved from any further liability* with respect to said well.

*Id.* (emphasis in original). The Texas Supreme Court found that "[t]he operating agreement simply does not explain the consequences of an assignment of a working interest to a third party." *Id.* at 346. "[T]he operating agreement did not expressly provide that Eland's obligations under the operating agreement should terminate upon assignment and Seagull did not expressly release Eland following the assignment of its working interest." *Id.* at 347.

Accordingly, the Court reaches the same conclusion in this case. Section 18.10 of the Lease Agreement did not expressly provide that Texhoma Fiber's obligations under the agreement should terminate upon assignment; thus, Texhoma Fiber was not expressly released from its non-circumvention obligation following the assignment to Comcell.

When a court finds that there is no express release in an assignment, "the contract's subject or other circumstances may indicate that obligations were not intended to survive assignment." *Id*. The Court does not find that the Lease Agreement's subject or any other circumstances imply that Texhoma Fiber should be released from its non-circumvention obligation after it assigned its

12

interests to Comcell. Section 18.8 of the Lease Agreement provides that "[n]o subsequent agreement concerning the Route shall be effective unless made in writing and executed by authorized representatives of the parties." There is no written, executed agreement releasing half of the fibers in the Texhoma Fiber Route from the non-circumvention obligation. Furthermore, the purpose of the non-circumvention provisions was to prevent Texhoma Fiber from providing cell site backhaul service to PEG's competitors at the sites subject to the Lease Agreement using the network paid for by PEG. To allow Texhoma Fiber to assign its non-circumvention obligation, retain half of the fibers subject to the Lease Agreement, and then subsequently lease those fibers to one of PEG's competitors would directly contradict that purpose. Therefore, the Court finds that Texhoma Fiber has a continuing obligation to not, directly or indirectly through other customers, offer or provide services to licensed CMRS carriers at the sites contained in Exhibit A to the Lease Agreement. Thus, the Court finds granting summary judgment in Texhoma Fiber's favor is unwarranted.

**II.     Texas Free Enterprise and Antitrust Act, and Texas Covenants Not to Compete Act**

Texhoma Fiber asserts that § 18.1 of the Lease Agreement, the non-circumvention provision, is an unlawful, unreasonable, and unenforceable restraint of trade in violation of the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code § 15.01, *et seq.*, and the Texas Covenants Not to Compete Act, Tex. Bus. & Com. Code § 15.50, *et seq.* The thirty-year non-compete obligation reads:

> TEXHOMA FIBER shall not, directly or indirectly through other customers, offer or provide services to licensed CMRS carriers at the sites contained in Exhibit A, without the prior written consent of PEG. Nothing herein shall restrict TEXHOMA FIBER'S right to provide any services to wireless carriers at sites not contained in Exhibit A.

Lease Agreement, at § 18.1.

Texhoma Fiber asserts that the Texas Covenants Not to Compete Act "supplements and clarifies" the Texas Free Enterprise and Antitrust Act's "broad proscription against trade restraints by establishing specific standards for covenants not to compete." (Dkt. #39 at p. 22). Texhoma Fiber further asserts that

> the general rule of reason [under the Texas Free Enterprise and Antitrust Act] does not apply to the noncompete obligation at issue in this case. Texhoma does not dispute that the Texas Free Enterprise and Antitrust Act is patterned off federal antitrust statutes or that the rule of reason standard that governs most restraints of trade under federal antitrust law also generally applies to contracts in restraint of trade under Texas law.

(Dkt. #39 at p. 23). Thus, the Court finds Texhoma Fiber has abandoned its affirmative defense under Texas Free Enterprise and Antitrust Act and exclusively relies on the Texas Covenants Not to Compete Act to invalidate the non-circumvention provision.

PEG asserts that the Covenants Not to Compete Act does not apply to the Lease Agreement because it applies exclusively to employment contracts, not commercial contracts (Dkt. #37 at pp. 20–22). The Court disagrees with PEG's argument but finds the Texas Covenants Not to Compete Act is still inapplicable to the Lease Agreement because the non-circumvention provision is a restrictive covenant running with the land, i.e. the Texhoma Fiber Route, and should be analyzed as such.

Although not legally binding, the Court finds the analysis in *Rolling Lands Investments, L.C. v. Northwest Airport Management, L.P.* persuasive. 111 S.W.3d 187 (Tex. App.—Texarkana 2003, pet. denied). In that case, the court rejected a challenge under the Texas Covenants Not to Compete Act to a deed restriction associated with a sale of real property which prevented competition with a neighboring airport. *Id.* at 200. The court held that "[t]he fueling rights restriction [was] a restraint on the use of a single parcel of real property and thus should not be reviewed as a noncompetition contract." *Id.* Similar to the fueling rights restriction in *Rolling*

*Lands,* the non-circumvention agreement is a restraint on the use of fiber optic cables at the specific locations in the Texhoma Fiber Route. Texhoma Fiber asserts that

> Section 18.1 of the [Lease Agreement] does not provide that Texhoma is prohibited from using the fibers in the Texhoma Fiber Route to compete with PEG for certain business at certain locations; it broadly provides that Texhoma is prohibited from offering or providing services to Cell Phone Companies at the sites covered by the [Lease Agreement] by any means whatsoever.

(Dkt. #39 at p. 11). The distinction is unavailing. The non-circumvention provision prevents Texhoma "from using the fibers in the Texhoma Fiber Route . . . [to offer or provide] services to Cell Phone Companies at the sites covered by the Lease Agreement by any means whatsoever." (Dkt. #39 at p. 11).

The noncompete agreements in the cases cited by Texhoma Fiber are also distinguishable because they specifically prohibit certain competitive conduct, not necessarily limit the use of the specific land (or in this case, fibers). *See CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *7 (Tex. App.—Dallas Apr. 21, 2017) (analyzing a restrictive covenant providing the venture partners would not participate in other restaurant operations at the Airport, and a restrictive covenant concerning the ownership or operations of restaurants in direct competition with TGI Friday's); *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 772 (Tex. App.—Beaumont 1992), *writ denied* (Apr. 21, 1993) (analyzing two restrictive covenants: (1) that if prior to the expiration of the franchise agreement, Appellee terminated the franchise agreement, Appellant was prohibited from operating a business selling fruit and nuts in Parkdale Mall for a period of two years from the date which Appellant ceased to conduct business pursuant to this agreement, and (2) that during the five-year term of the franchise agreement, Appellant would not operate another business selling fruit and nuts within the metropolitan area of the Parkdale Mall store in Beaumont, Texas). Those restrictive covenants prohibit competitive

conduct within a specified geographical area, not necessarily prohibit the use of specific land. *See Ehler v. B.T. Suppenas Ltd.,* 74 S.W.3d 515, 520–21 (Tex. App.—Amarillo 2002, no pet.).

The Court now analyzes whether the non-circumvention provision is a valid restrictive covenant running with the land.[5] "A real covenant 'runs with land' if:(1) it touches and concerns the land; (2) it relates to a thing in existence or specifically binds the parties and their assigns; (3) it is intended by the original parties to run with the land; and (4) when the successor to the burden has notice." *Cummings v. Williams Prod.-Gulf Coast Co., L.P.*, No. 4:06CV11, 2007 WL 172536, at *4 (E.D. Tex. Jan. 18, 2007) (citing *Inwood North Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex. 1987). The Lease Agreement specifically provides that it is binding on the successors and assigns of Texhoma Fiber. Lease Agreement, at § 18.10 (the Lease Agreement "binds and inures to the benefit of any permitted assignees or successors to the parties."). The land is specifically identified. The agreement is to build a fiber optic cable network to service licensed CMRS carriers at the sites located in the Texhoma Fiber Route. There is also privity between the parties. The Court finds that the non-circumvention provision is a valid restrictive covenant that "runs with the fibers" and is binding on Texhoma Fiber. As such, summary judgment is PEG's favor is warranted.

## III. Declaratory Relief

Both parties also move for summary judgment on PEG's claim for declaratory relief. PEG specifically seeks a declaration that "Texhoma Fiber has a continuing duty, extending for thirty years from the date of acceptance, for each site listed in the [Lease Agreement] or its amendments,

---

[5] In its sur-reply, Texhoma Fiber asserts that "the fibers leased by PEG under the [Lease Agreement], and the remaining fibers in the Texhoma Fiber Route, are all personal property, not real property" and , thus, "the non-compete obligation cannot 'run with the fiber.'" (Dkt. #45 at p. 4). The Court disagrees. *See In re Energytec, Inc.*, 739 F.3d 215, 221 (5th Cir. 2013) (finding "[t]he real property at issue . . . is a gas pipeline system and the rights-of-way required for its placement" constituted covenants running with the land including the right to transportation fees—because the traveling of natural gas along the length of the pipeline was for the use of the real property—and the right to consent to the assignment of the pipeline—because the rights impact the owner's interest in the pipeline).

not to directly or through other customers, offer or provide services to licensed CMRS carriers, without prior written consent of PEG Bandwidth." (Dkt. #37 at p. 37) (quotations omitted).

The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but does not impose a duty to do so. *Id.*

The Court finds that PEG's motion for summary judgment on its claim for declaratory relief should be granted and Texhoma Fiber is bound by the non-circumvention obligation until the expiration of the thirty-year Lease Agreement.

## IV.  Attorneys' Fees

Texhoma Fiber also moves for summary judgment on PEG's request for attorneys' fees, asserting that the Lease Agreement does not permit PEG to recover attorneys' fees and Section 38.001 of the Texas Civil Practice and Remedies Code restricts the proper target of reasonable attorneys' fees to an "individual" or a "corporation," but not other legal entities, such as limited liability companies. TEX. CIV. PRAC. & REM. CODE § 38.001(8). PEG concedes that "[a]s of now, the Texas Legislature still has not fixed the hole created by case law construing Texas statutory law so as not to allow recovery of attorney fees from a limited liability company in a

breach of contract action." (Dkt. #38 at p. 5) (citing *See Vast Construction, LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 728 n.16 (Tex. App.—Houston [14th Dist.] 2017, no pet. h.)). Both PEG and Texhoma Fiber are limited liability companies and such a request for attorneys' fees is misplaced and PEG's claim for attorneys' fees should be dismissed. Summary judgment should be granted on this claim.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. #37) is hereby **GRANTED** and the Court declares that Defendant is bound by the non-circumvention obligation until the expiration of the thirty-year Lease Agreement. Therefore, no material questions of fact exist with regard to whether Defendant is liable to Plaintiff for breach of the Lease Agreement. The only remaining issue to be decided by the trier of fact is the amount of damages.

It is further **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #36) is **GRANTED** in part and **DENIED** in part. Defendant's motion is granted only as to Plaintiff's claim for attorneys' fees and Plaintiff's claim for attorneys' fees is hereby dismissed.

**IT IS SO ORDERED**.
SIGNED this 7th day of March, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE